**Nicholas FAST**

v.

**SOUTHERN OFFSHORE YACHTS, et al.**

**Civ. No. H–83–792 (PCD).**

United States District Court, D. Connecticut.

May 30, 1984.

Glenn T. Carberry, Dupont & Tobin, New London, Conn., for plaintiff.

Emmet L. Cosgrove, Waller, Smith & Palmer, New London, Conn., for defendants Southern Offshore Yachts, Inc.; Wilma Potter and Edwin Potter.

William J. Doyle, Wiggin & Dana, New Haven, Conn., for defendants Thomas R. Cooper and Charles A. Lovell.

RULING ON PENDING MOTIONS

DORSEY, District Judge.

This diversity action was brought upon a March 1982 yacht purchase agreement by Nicholas Fast (Fast) against Southern Offshore Yachts, Inc. (Southern), its president, Edwin J. Potter, and secretary/treasurer, Wilma F. Potter, (the Potters), and two of its former employees, Charles A. Lovell (Lovell) and Thomas R. Cooper (Cooper). For the reasons set forth below, the motions to dismiss and the motion to stay filed by Lovell and Cooper, and Southern's motion to disqualify plaintiff's counsel, are denied. Plaintiff's motion for partial sum-

mary judgment is, in substantial part, granted.

*Facts*

Notwithstanding Southern's (a) having received from plaintiff payments of ninety per cent of the yacht's purchase price in accordance with the purchase agreement, and (b) having at its Newport facility a customized but unoutfitted yacht earmarked for filling Fast's order since October 1983, Southern has nonetheless refused to outfit and deliver the yacht. The present log jam results from the triangular and blurred dealings among Fast (the buyer), Southern (the seller), and Southern's now-estranged former employees, Lovell and Cooper, who are claimed by Southern to have misled Fast and otherwise frustrated consummation of this transaction.

While Lovell and Cooper in fact may well have exceeded the proper scope of their authority as agents of Southern—as to which matter the recent jury verdict in favor of Southern in a district of Maryland tort action is significant—that question need not be determined for purposes of resolving the pending motions. The following narration summarizes the undisputed facts and indicates the two areas of substantial, but for present purposes largely immaterial, dispute.

On March 6, 1982, at Southern's Newport office, Fast and Southern—through its then-sales representative, Lovell—executed a yacht purchase agreement whereby Fast agreed to buy and Southern agreed to sell a customized "Tayana 37" cruising yacht, to be manufactured in Taiwan in accordance with blueprints and a customizing narration statement approved by Fast. The purchase price was $99,572.00. Twenty per cent, or $19,914.00, of the contract price was due and paid upon execution of the contract. Seventy per cent, or $69,000.00, was due within five days of the yacht's arrival at a United States port of entry, and the remaining ten per cent, or $9,957.20, was due upon delivery. The contract specifically recognized that:

> Seller cannot guarantee an exact date of delivery [and that] Seller shall not be liable for any delay in delivery or inability to render performance required by this agreement caused by any event or contingency beyond its control.[1]

Plaintiff's Exhibit B, p. 6.

On or about October 1, 1982, Fast delivered to Lovell a check to the order of Southern for the seventy per cent due upon the arrival of the yacht at an American port. Lovell returned this check, with instructions to Fast, subsequently confirmed by Cooper, to send the seventy per cent directly to Cooper, who, purportedly, had been assigned all of Southern's rights and privileges and certain of its duties and obligations under the contract.[2] (Plaintiff's Exhibit E; Cooper Affidavit, ¶¶ 3, 4). On or about October 21, 1982, Fast mailed to Cooper a check payable to Cooper in the amount of $69,700.00, seventy per cent of the contract price. On or about October 22, 1982, Fast and Lovell inspected a Tayana 37 (bearing Hull No. 336) in Newport and found it to deviate substantially from the blueprints and specifications[3] approved by Fast. The yacht was rejected as nonconforming.

At this point, Southern and its employees, Lovell and Cooper, parted ways in respect of the representations made to Fast regarding the procurement of a conforming

---

1. By negative implication and usual contract principles, Southern thus covenanted to deliver a conforming yacht within a reasonable time. *See* Conn.Gen.Stat. § 42a–2–309(1) (the time for delivery under a sales contract, if not provided in UCC Article 2 or agreed upon, shall be a reasonable time); *Atlantic Terra Cotta Co. v. Chesapeake Terra Cotta Co.,* 96 Conn. 88, 113 A. 156 (1921) (where a contract for the sale of goods fixes no time for delivery, a reasonable time is implied).

2. An agreement purporting to make such assignment, signed by the Potters but not by Cooper, is attached to Cooper's affidavit as Exhibit A.

3. The deviations purportedly resulted from Southern's forwarding to the manufacturer the wrong set of blueprints for the interior of the yacht. (Lovell Affidavit, ¶ 5).

yacht. That Southern agreed to procure a replacement yacht to fulfill the contract is undisputed. Hotly disputed, however, is whether during the period of November 1982, through February 1983 Southern agreed, or Lovell had actual or apparent authority so as to bind Southern, (a) to credit the monies paid by Fast towards the purchase price and (b) to pay Fast interest at the rate of one per cent per month on his deposits of $89,614.00. *Compare* Fast Affidavit at ¶¶ 14–15 *with* Lovell Affidavit at ¶¶ 7, 8 and Potter Affidavit at ¶¶ 3–5. At that point, the deposits remained held as delivered, in part (twenty per cent) by Southern and in part (seventy per cent) by Cooper. Thereafter, Lovell and Cooper left the employ of Southern.

In August of 1983, Southern advised Fast that a newly constructed replacement Tayana 37 (bearing Hull No. 380) would soon arrive in the United States and that he should forward $69,700.00 to Southern. As confirmed by a subsequent letter from Southern's counsel, Southern would not credit the $69,700.00 previously paid by Fast to Cooper. In separate transfers in late August and September of 1983, Cooper forwarded to Southern the $69,700.00 paid by Fast.[4] (Cooper Affidavit, ¶¶ 10, 11; Fast Affidavit, ¶¶ 18, 19). On or about October 8, 1983, Fast inspected the second yacht in Newport and found various defects the nature of which he directed his counsel to relay to Southern. Counsel did so and demanded that Southern outfit the vessel and repair the listed defects in accordance with the yacht purchase agreement.

Southern contends that Fast represented that he expected the yacht to be promptly outfitted and delivered *without* his paying the final ten per cent installment due Southern on delivery. Fast contends, on the contrary, that—through counsel—Southern insisted upon his payment of the final amount *before* it would complete the outfitting, contrary to the terms of the contract.[5] (*Compare* Frantz Affidavit, ¶¶ 4, 5 *with* Fast Statement of Material Facts, ¶ 23 and Carberry Affidavit, ¶¶ 4, 5).

Plaintiff brought this suit on September 16, 1983. The first count, directed to all defendants, seeks principally specific performance of the purchase agreement, i.e. the delivery of a completed yacht and the assessment of interest at the rate of one per cent per month running from November 19, 1982, according to the agreement alleged above, and an injunction restraining defendants from transferring or otherwise encumbering the yacht bearing Hull No. 380 and still at Newport. The second count alleges fraudulent misrepresentation by Cooper and Lovell and seeks the return of the $69,700.00 paid Cooper, plus interest and exemplary and punitive damages. Southern in turn has stated a cross-claim against Lovell and Cooper, alleging in multiple counts theories of breach of fiduciary duty, breach of employment contract, tortious interference with contractual relationships and related torts arising from Lovell and Cooper's dealings with Fast.[6]

## Discussion

### A. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff has moved for partial summary judgment as to the first count. Lovell and Cooper oppose the motion, by affidavit alone, on grounds that with regard to Fast they never acted other than as agents of Southern and thus are not subject to the jurisdiction of this court sitting in diversity. Southern opposes the motion on grounds of the two disputed issues of fact noted

---

**4.** Apparently Cooper secured these monies in large part by finding a buyer for the non-compliant yacht, Hull No. 336.

**5.** Clearly underlying this dispute is the question of whether Southern agreed or should be deemed to have agreed to the interest assessments noted above.

**6.** Counsel for Southern has represented to the court that the cross-claim tracks the language of the Maryland proceeding referred to above in which a jury returned a verdict on all counts for Southern against Cooper if not also Lovell. The parties have not to date suggested the court give any preclusive effect to the Maryland judgment.

above, i.e. its liability to Fast for interest payments as per agreements allegedly made by Lovell and/or Cooper to Fast, and the conflicting postures adopted with respect to the final ten per cent payment. The court deems neither of these factual disputes material to the issues raised by this motion.

■ Under the parties' contract, as supplemented by Connecticut law, particularly Conn.Gen.Stat. § 42a–2–309(1), Southern was obliged to deliver a conforming yacht within a reasonable time. By its own conduct, Southern has established the parameters for the reasonable time of delivery required by the instant contract, the delivery of the first non-conforming vessel in October 1982. The failure of that delivery was due solely to the substantial non-conformity of the yacht tendered, which was solely the responsibility of Southern. Accordingly, the court deems October 1982 to be a reasonable time in which Southern was obligated to produce a conforming vessel. The "contingency beyond its control" clause is inapplicable, as no such contingency occurred here. Southern has thus been in breach of the agreement since October 22, 1982, when Fast justifiably rejected the non-conforming yacht.

Southern's claim of anticipatory repudiation, Conn.Gen.Stat. § 42a–2–610, on the part of plaintiff is specious. First, assuming *arguendo* that the representations Southern attributes to Fast and his counsel may amount to a repudiation, Southern could not invoke the remedies reserved to an "aggrieved party." Conn.Gen.Stat. § 42a–1–201(2). An "aggrieved party" is there defined as a party entitled to a remedy. For Southern to be so entitled would incongruously excuse its antecedent breach, noted above, in favor of an anticipatory repudiation by plaintiff who was not previously in breach. Second, plaintiff's counsel's subsequent discussions with Southern's counsel, including the execution and signing by Fast of a proposed escrow agreement for the remaining installment, constituted a sufficient retraction of any prior repudiation under Conn.Gen.Stat.

§ 42a–2–611 reinstating Southern's obligations. Even if Southern's perception of Fast's representations constituted "reasonable grounds for insecurity," Conn.Gen. Stat. § 42a–2–609(1), the previous observations would equally constitute "adequate assurance of due performance" so as to reinstate Southern's obligations under the contract. Lastly, though Fast was obliged for the final payment at delivery, an obligation he does not dispute, a claim for a substantial offset existed and still exists in the form of the interest on the deposits made in March and October 1982.

Specific performance by delivery of the vessel identified and earmarked for Fast is clearly warranted, as the customized yacht is undeniably unique and Fast has substantially performed all obligations. Conn.Gen. Stat. § 42a–2–716(1). Further, Fast is clearly entitled to incidental damages in the form of statutory interest on the monies paid by him running from the date of the breach until the present. Conn.Gen.Stat. § 42a–2–715(1); Conn.Gen.Stat. § 37–3a; *see* Restatement 2d Contracts § 354(1) (1979). As consequential damages have not been established beyond controversy, Conn.Gen.Stat. § 42a–2–715(2), none are awarded at the present time.

Counsel shall determine, if they can agree, or submit their positions to the court if they cannot, the calculation of the interest due under Conn.Gen.Stat. § 37–3a. Rather than invite further conflicts between and among the parties, the court deems it advisable to order that the yacht be tendered on or before June 11, 1984, with plaintiff entitled to credit for the statutory interest then accrued. The final installment due shall be further reduced, or the amount due plaintiff increased, by any expense required of plaintiff to complete the outfitting so as to place it in a deliverable condition according to the plans and specifications approved by Fast and incorporated in the purchase agreement. Should the parties be unable to agree as to the net amount of the remaining payment required of plaintiff by the purchase agreement as reduced by any expenses needed to

complete the yacht, in relation to the interest accrued on the deposits and due the plaintiff, the court will decide the net amount due and to whom, on timely motion and/or on further hearing.

Thus, to the extent it is directed against Southern, and seeks specific performance of the yacht purchase agreement, and an assessment of statutory interest for the breach thereof, plaintiff's motion for partial summary judgment is granted. To the extent it seeks further interest on a contractual basis or consequential damages, it is denied without prejudice.

### B. *Remaining Motions*

The motions of Lovell and Cooper to dismiss plaintiff's complaint as to them on grounds of the lack of personal jurisdiction are denied without prejudice. To the extent further proceedings in this matter, either on plaintiff's claim or the cross-claim, merit closer scrutiny of the question of both Lovell's and Cooper's contacts with Connecticut and their status with respect to Fast either as agents of Southern or independent tort-feasors, this question is better assessed and resolved upon a more complete record.

■ Southern's motion to disqualify Fast's counsel is denied. Southern contends that by supporting plaintiff's position with his own affidavit, Fast's counsel has run afoul of the Code of Professional Responsibility in effect in Connecticut and recognized by this court, Rule 2(f), Local Rules, District of Connecticut. Withdrawal is provided for by DR 5–102(A) upon counsel's learning that he ought to be called as a witness on behalf of his client. In the absence of prejudice to the client, continued representation is allowed by DR 5–102(B) where counsel is likely to be called *other than* on behalf of his client. The court deems this latter provision to control. If the court did not preclude Southern's claim of anticipatory repudiation, the burden on this issue would be Southern's. It would be incongruous to allow defendant to "smoke out," or force the withdrawal of plaintiff's counsel, under DR 5–102(A), simply by asserting a defense or counterclaim as to which the defense bears the burden and testimony of plaintiff's counsel may be relevant.

Finally, the motion of Cooper and Lovell for a stay and other relief is denied as moot and inappropriate even if it were considered and decided at an earlier point in time.

The court will, upon motion and the inability of the parties to agree upon the calculations described above, hear this matter further. The Scheduling Order issued April 12, 1984, shall stay in effect. By compliance with the accompanying Trial Preparation Order, this matter shall be deemed ready for trial as of the middle of August. As this ruling grants plaintiff substantially the relief requested in his complaint, he is hereby ordered to show cause on or before June 22, 1984, why his action should not be dismissed as moot. In the absence of such cause, this case shall proceed on the cross-claim alone.

SO ORDERED.